972 F.2d 340
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Richard E. LAWRENCE, Plaintiff-Appellant,
v.
Edward W. MURRAY; Edward C. Morris; William P. Rogers;
John B. Taylor; Steve Hollar; Butch Robinson; Edward J.
ST. Angelo; C. J. Chaffins; Billie Reeves; Barbara Green;
Mike Datillio; Russell Fitzgerald, Defendants-Appellees.
 No. 91-6314.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 7, 1992
Decided: August 6, 1992
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CA-91-350-R)
 ARGUED: Harold Wilmer Dingman, Harold W. Dingman, P.C., Staunton, Virginia, for Appellant.
 Robert Harkness Herring, Jr., Assistant Attorney General, Richmond, Virginia, for Appellees.
 ON BRIEF: Mary Sue Terry, Attorney General of Virginia, Karen L. Lebo, Assistant Attorney General, Richmond, Virginia, for Appellees.
 W.D.Va.
 Affirmed.
 Before WILKINS, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Richard E. Lawrence, a Virginia prisoner, filed suit pursuant to 42 U.S.C.A. §§ 1983, 1985 (West 1981), alleging that Virginia Department of Corrections (VDOC) officials assigned him to an incorrect custody status and denied him work release in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1. The district court granted summary judgment in favor of VDOC officials. We affirm.
 
 I.
 
 2
 All inmates received into the VDOC are classified and assigned to a custody status pursuant to Division of Adult Institutions Operating Procedure 823 (DOP 823). DOP 823 requires that VDOC officials calculate a numerical score for each inmate based upon various factors including the severity of the inmate's crime and behavioral history at the institution. Unless one of a number of administrative override factors listed in DOP 823 applies, VDOC officials must assign the inmate to the custody status determined by the numerical score. Administrative override provisions, if applicable, permit VDOC officials the discretion to place an inmate in a higher or lower custody status than that indicated by the inmate's numerical score. One of these administrative overrides, the H-4 override, provides for an increase in custody status if the commission of the inmate's offense involved extraordinary violence. According to Custody Scoring Interpretation Transmittal No. 2, a crime is deemed to have involved extraordinary violence if there is ample evidence of severe physical or psychological injury to the victim.
 
 
 3
 Lawrence was convicted of four counts of crimes against nature, see Va. Code Ann. § 18.2-361 (Michie 1988), and three counts of contributing to the delinquency of a minor, see Va. Code Ann. § 18.2371 (Michie 1988). Following his initial classification hearing, Lawrence was assigned B custody status on the basis of the severity of his crimes. Three subsequent reclassification reviews also resulted in Lawrence's scoring in the B range and, consequently, in his assignment to B custody status. Lawrence eventually received a numerical score that placed him in the range for A custody. However, VDOC officials applied the H-4 override and retained Lawrence in B custody. In each of his ensuing reclassification reviews, Lawrence continued to score within the A custody range, but on each occasion, VDOC officials placed Lawrence in B custody pursuant to the H-4 override.
 
 
 4
 Lawrence filed a grievance, claiming that the H-4 override was arbitrarily and capriciously applied in assigning him to B custody status. VDOC officials denied Lawrence's request for reclassification to A custody status at each of four levels in the grievance process, reasoning that because Lawrence's central criminal file reflected that at least one of his victims sustained severe psychological injury, the H4 override was correctly applied.
 
 
 5
 Lawrence, subsequently, filed this action alleging that he had been denied his rights to due process and equal protection in violation of the Fourteenth Amendment. The district court granted summary judgment in favor of the VDOC officials. The district court did not specifically address substantive due process in reaching this result. The court, however, did find that DOP 823 created a liberty interest for an inmate to have his custody status determined in a specified manner and that Lawrence had been provided all of the procedure due to him. In regard to his equal protection claim, the district court concluded that Lawrence had failed to allege that the defendants had impermissibly discriminated against any class of persons. Lawrence appeals, arguing that his rights to substantive and procedural due process, as well as his right to equal protection, have been violated by VDOC officials.
 
 II.
 
 6
 Because a motion for summary judgment is a question of law, it is reviewed de novo on appeal. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). In reviewing a grant of summary judgment, we must view the facts, and the inferences to be drawn from the facts, in the light most favorable to the nonmoving party. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed R. Civ. P. 56(c)). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact" such that the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).
 
 III.
 A.
 
 7
 Lawrence contends that VDOC officials improperly assigned him to B custody status in violation of his right to procedural due process.[1] We agree with the district court that DOP 823 creates a liberty interest in a prisoner's classification status by employing explicitly mandatory language to set forth specific predicates to be followed in reaching classification determinations. Compare Hewitt v. Helms, 459 U.S. 460, 470-472 (1983) (prisoners have a liberty interest in remaining in the general prison population, as opposed to being assigned to administrative segregation, because state regulations setting forth the procedure for assignment to administrative segregation use mandatory language requiring prison officials to find specific substantive predicates) with Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 464-65 (1989) (prisoners have no liberty interest in visitation privileges because regulations invest prison officials with absolute discretion in granting or denying the admittance of visitors). However, it is undisputed that Lawrence was repeatedly permitted to fully contest his custody status at each reclassification hearing and at the subsequent grievance proceedings. Lawrence does not contend that he failed to receive adequate notice or opportunity to be heard.[2] We need not belabor this issue, and therefore, affirm its resolution on the reasoning of the district court.
 
 B.
 
 8
 The Supreme Court has noted that the Due Process Clause "serves to prevent governmental power from being 'used for purposes of oppression,' " Daniels v. Williams, 474 U.S. 327, 331 (1986) (quoting Den ex den. Murray v. Hoboken Land & Improvement Co., 59 U.S. (18 How.) 272, 277 (1856)), and that its substantive component "bars certain arbitrary, wrongful governmental actions'regardless of the fairness of the procedures used to implement them,' " Foucha v. Louisiana, 112 S. Ct. 1780, 1785 (1992) (quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)). In raising a substantive due process challenge to his classification, Lawrence maintains that prison officials arbitrarily classified him a violent sexual offender even though he was convicted of consensual sodomy, an offense he maintains was a nonviolent one.
 
 
 9
 It is undisputed that denial of A custody using the H-4 override is appropriate whenever a victim experiences severe physical or psychological harm. The only evidence in the record indicates that at least one of Lawrence's victims suffered severe psychological injury. Thus, Lawrence failed to raise a genuine issue of material fact regarding his assertion that he was misclassified, and we affirm. Because Lawrence has not demonstrated that he was misclassified, we need not address his claim that an improper determination of custody status implicates a liberty interest.
 
 IV.
 
 10
 Lawrence claims that his classification to B custody status denied him equal protection as guaranteed by the Fourteenth Amendment. We agree with the district court that Lawrence's claim that he was improperly classified as a violent sexual offender does not give rise to an equal protection violation; thus, we affirm the grant of summary judgment on the equal protection claim based on the reasoning of the district court.
 
 AFFIRMED
 
 
 [1]
 Lawrence also challenges the refusal of VDOC officials to grant him work release. Virginia inmates, however, have no liberty interest in work release programs. Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991) (en banc). Consequently, we need not address Lawrence's constitutional claims insofar as they relate to this issue
 
 
 [2]
 Because of the need " 'to preserve internal order and discipline and to maintain institutional security,' " the Supreme Court has concluded that an informal, nonadversarial examination of the information forming the basis for a decision by prison officials, including any statement submitted by the inmate, is sufficient to satisfy the requirements of the Due Process Clause as long as the review is conducted within a reasonable time after the initial decision. Hewitt, 459 U.S. at 472 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)). This process only requires that the inmate be given notice and an opportunity to be heard, either orally or in writing. Id. at 476